IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>GARY WINTERS,<br><br>    Defendant. | No. 23-CR-3032-LTS-KEM<br><br>**REPORT AND RECOMMENDATION** |

Defendant Gary Winters moves to suppress evidence, arguing that the legalization of hemp cannabis products means that the odor of marijuana cannot provide probable cause to search a vehicle. Winters asserts the unlawful search requires suppression of items seized from his person and vehicle, as well as information obtained from a consensual search of his cell phone. He also argues that a delay in reading his *Miranda* rights requires the suppression of the incriminating statements he ultimately made after being provided with *Miranda* warnings. The Government filed a resistance (Doc. 94), and Winters filed a reply (Doc. 102). I recommend **denying** the motion to suppress (Doc. 81).

## I. FACTS AND BACKGROUND[1]

In the early morning hours of August 24, 2023, Iowa State Patrol Officer Zach Scott initiated a traffic stop of Winters's vehicle after it failed to fully stop at a stop sign. He approached the driver's side window and informed Winters, the driver and sole passenger, the reason for the stop. He asked Winters what he had been doing (visiting a

---

[1] The parties agreed that an evidentiary hearing was unnecessary and that the court could consider the facts based on the briefs, police report (Defendant Exhibit A), dash camera video of the traffic stop (Government Exhibit 1), and transcripts of expert testimony from another case (Defendant Exhibits B and C). Doc. 95.

cousin) and for his license and registration. He then asked Winters how much marijuana was in the vehicle. Winters responded, "I don't think there's any." Officer Scott said, "You don't think there's any?" and Winters said, "No. Why?" Officer Scott told Winters he could smell marijuana. Winters continued to assert he knew of no marijuana in the car. He denied ever smoking marijuana. Officer Scott asked whether somebody could have had marijuana in the car previously, and Winters said they "might have," but he did not know who would have possessed marijuana in his car. Winters declined to provide consent for Officer Scott to search his car, and Officer Scott said he could search based on the odor of marijuana.

Officer Scott ordered Winters out of the car and began searching his person, seizing baggies of marijuana and methamphetamine. He asked whether Winters had any other marijuana in the vehicle, and Winters said he did not. Upon completion of the search of his person, Officer Scott handcuffed Winters and told him he was under arrest for possession. Officer Scott asked again whether Winters had any other drugs, noting that he "ke[pt] finding stuff on [Winters]," including hidden in Winters's collar. Officer Scott said Winters must think he was dumb. Officer Scott put Winters into the squad car and searched his car, finding more drugs. When Officer Scott returned to the squad car, he advised Winters of his *Miranda* rights. Winters was later taken to the police station, where he was re-advised of his *Miranda* rights and made incriminating statements. Winters also provided officers with access to and consent to search his cell phone, from which it appears law enforcement obtained information.

## II. DISCUSSION

Winters argues that because hemp-derived cannabis products were legal in Iowa at the time of the traffic stop, the odor of marijuana could not provide Officer Scott with probable cause to search his vehicle. Winters also argues that because Officer Scott did not read him his *Miranda* rights when he ordered him out of the car, all of Winters's later incriminating statements must be suppressed.

2

### A. *Probable Cause*

Winters does not challenge the initial stop of his vehicle. But he does challenge whether Officer Scott had probable cause to search his car.

> [T]he automobile exception to the Fourth Amendment's warrant requirement permits the warrantless search or seizure of a vehicle by officers possessing probable cause to do so. "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." A combination of otherwise innocent factors may create probable cause. Because "probable cause is a practical and common-sensical standard," "an officer may draw inferences based on his own experience" to determine whether probable cause exists.[2]

The Eighth Circuit has "repeatedly held that the odor of marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception."[3] Winters argues that these cases are no longer good law based on the changed legality of marijuana and other cannabis products. Specifically, Winters argues that certain hemp-derived cannabis products were legalized at both the state and federal level by the 2018 federal farm bill and Iowa's 2019 Hemp Act.[4] He points to expert testimony from law enforcement that there is no difference in smell between raw marijuana and raw hemp, or burned marijuana and burned hemp.[5] Thus, he argues that the smell of marijuana could not provide Officer Scott with probable cause to search his vehicle, as it smells the same as legal hemp.

---

[2] *United States v. Soderman*, 983 F.3d 369, 375 (8th Cir. 2020) (cleaned up) (quoting *United States v. Murillo-Salgado*, 854 F.3d 407, 418 (8th Cir. 2017)).

[3] *United States v. Williams*, 955 F.3d 734, 737 (8th Cir. 2020).

[4] *See* **Iowa Attorney General's Statement on Hemp and CBD Products** (March 10, 2021), *available at* https://publications.iowa.gov/44556/.

[5] Doc. 103-3 at 7-8, 15 (Defendant's Exhibit C); *see also* Doc. 103-2 at 14 (Defendant's Exhibit B).

The Eighth Circuit has rejected Winters's precise argument in an unpublished opinion.[6] In any event, here, when Officer Scott confronted Winters about the smell of marijuana, Winters did not say that Officer Scott smelled legal hemp. Instead, Winters denied any knowledge of the smell and suggested he possessed no cannabis products, legal or illegal. The smell of marijuana, combined with Winters's denial of any knowledge of the smell, provided Officer Scott with probable cause that the source of the smell was of the illegal variety.

I recommend finding that Officer Scott had probable cause to search Winters's vehicle. Accordingly, I recommend denying suppression of evidence seized during the search of Winters's vehicle and the subsequent consensual search of Winters's cell phone.[7]

### B. Miranda

Under *Miranda*, a suspect subject to custodial interrogation must first be advised that he has the right to remain silent and the right to an attorney, and he must waive these rights before the interrogation can proceed.[8] Winters argues that he was "in custody"

---

[6] *United States v. Nava*, No. 23-1132, 2023 WL 8368641, at *2 (8th Cir. Dec. 4, 2023) (per curiam) (holding that officer had probable cause to search car based on smell of marijuana, despite defendant's argument of error based on "the legality of medical marijuana and industrial hemp under Arkansas law"), *cert. denied,* 144 S. Ct. 1367 (2024); *see also* **State v. Luckett**, No. 21-1808, 2022 WL 3064782, at *3 (Iowa Ct. App. Aug. 3, 2022) (holding odor of marijuana from a vehicle provides probable cause to search, even after legalization of hemp; "Even if that same smell could have come from hemp, a potentially innocent explanation does not undermine probable cause of an unlawful explanation.").

[7] Winters argues that the cell phone information should be suppressed as fruit of the poisonous tree under *Wong Sun v. United States*, 371 U.S. 471, 487088 (1963). Doc. 81-1 at 6.

[8] **Miranda v. Arizona**, 384 U.S. 436, 478-79 (1966).

for purposes of *Miranda* as soon as Officer Scott ordered him out of the car.[9] Winters argues that by the time he was advised of his rights in the squad car, "the taint of the initial questioning affected the Defendant such that his subsequent waiver was invalid." Doc. 81-1. He requests suppression of statements he made to Officer Scott after being read his *Miranda* rights and statements he made to investigators later on that morning.

It is unclear how initial questioning could have tainted later questioning. Prior to *Miranda* warnings, Winters made no incriminating statements. When Officer Scott asked if he would find drugs in the car, Winters denied possessing marijuana or any other drugs. The Supreme Court has held that an initial *Miranda* violation does not require suppression of later, warned statements when there is no "causal connection" between the two statements and the officer did not intentionally circumvent *Miranda*.[10]

I recommend rejecting Winters's argument that incriminating statements he made after being provided with *Miranda* warnings must be suppressed as "fruit of the poisonous tree" of an earlier *Miranda* violation.

### III. CONCLUSION

I respectfully recommend **DENYING** Winters's motion to suppress (Doc. 81).

Trial in this case is currently set for a date certain of August 12, 2024. Doc. 69. The court will therefore order a shortened objection period to ensure the district court has sufficient time to rule on the objections before trial.[11] Objections to this Report and

---

[9] I do not address whether Winters was in custody because he made no incriminating statements at that time that might require suppression and as explained in this section, his later incriminating statements were made after he was advised of and waived his *Miranda* rights.

[10] ***Missouri v. Seibert***, 542 U.S. 600, 614-15 (2004) (citing ***Oregon v. Elstad***, 470 U.S. 298, 311-14 (1985)).

[11] Codefendant's pending motions (Docs. 104, 111) may necessitate a trial continuance, which the court plans to discuss with the parties at a status conference on July 18. Doc. 112. If trial is continued, the court will order the normal objection period at that time.

Recommendation, in accordance with 28 U.S.C. § 636(b)(1), Federal Rule of Criminal Procedure 59(b), and Local Criminal Rule 59, must be filed within **seven** days of the service of a copy of this Report and Recommendation; any response to the objections must be filed within **three** days after service of the objections. A party asserting such objections must arrange promptly for the transcription of all portions of the record that the district court judge will need to rule on the objections.[12] Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.[13] Failure to object to the Report and Recommendation waives the right to de novo review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein.[14]

**DATED** July 16, 2024.

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa

---

[12] **LCrR 59**.

[13] *See* **Fed. R. Crim. P. 59**.

[14] *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).